IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-20507-KMM

BRIAN LEIGHTON,

 Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

 Defendant.
               /

## ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Royal Caribbean Cruises, LTD.'s ("Defendant" or "RCCL") Motion to Dismiss and Compel Arbitration (ECF No. 7) and Plaintiff Brian Leighton's ("Plaintiff" or "Leighton") Motion for Remand (ECF No. 9) and related Responses (ECF Nos. 8; 16) and Replies (ECF Nos. 13; 17). The Motions are now ripe for review. UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons set forth below, the Court now GRANTS Defendant's Motion and DENIES Plaintiff's Motion.

### I. BACKGROUND

Plaintiff Brian Leighton is a Jamaican citizen and legal permanent resident of the United States who was formerly employed as a seaman by RCCL, a corporation with its principal place of business in Miami, Florida. Plaintiff served as a provision storekeeper aboard RCCL's vessel the *Explorer of the Seas*. The terms of Plaintiff's employment was governed by a Sign on Employment Agreement ("SOEA") between the parties that covers the relevant periods of this

cause of action. *See* SOEA (ECF No. 7–2). The SOEA contains the following arbitration provision:

> All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded, or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator, shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. ("The Convention") . . . .

*Id*. at p. 4, ¶ 1. The SOEA also dictated that any arbitration shall take place in Miami, Florida, Oslo, Norway, or in any location agreed by the Owners/Company and the Seafarer, with the procedural and substantive law of the proceeding being the law of Norway. *Id*. ¶ 3. Plaintiff signed the SOEA certifying that he had read, understood, and agreed to its terms. *Id*. at p. 5.

In December 2013, while working aboard the *Explorer of the Seas*, Plaintiff suffered severe injuries to his back while lifting a box of frozen meat. Compl. ¶ 13 (ECF No. 1–4). Plaintiff sued RCCL in the Circuit Court for the Eleventh Judicial Circuit in and for Miami–Dade County, Florida for Jones Act negligence (Count I), unseaworthiness (Count II), failure to timely provide entire maintenance and cure (Count III), failure to treat (Count IV) and wages and penalties (Count V). RCCL removed the case to this Court, asserting federal question jurisdiction under the Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), codified at 9 U.S.C. §§ 202–208 (the "Convention Act"). *See* Notice of Removal (ECF No. 1). RCCL now seeks to dismiss the case and compel arbitration, arguing that pursuant to the SOEA, Plaintiff must submit his claims to arbitration under Norwegian law. *See* Mot. to Dismiss (ECF No. 7). In response and in his Motion for Remand (ECF No. 9), Plaintiff

2

argues the Convention is inapplicable because he and RCCL are both United States citizens and their legal relationship does not present an adequate nexus to a foreign state.

## II. LAW AND ANALYSIS

It is well established that Congress, through the passage of the Federal Arbitration Act ("FAA"), created a "strong federal policy in favor of arbitration." *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009); *see also Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003). Therefore, "[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Under this liberal policy, it is the duty of courts to "rigorously enforce agreements to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Further, "[t]he New York Convention is incorporated into federal law by the FAA." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998).

In deciding whether to compel arbitration under the Convention Act, courts must only engage in a "very limited inquiry." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005)). This is "an inquiry colored by a strong preference for arbitration." *Bautista*, 396 F.3d at 1301; *see also Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (noting that "a district court must be mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes") (internal quotation marks omitted).

Section 205 of the Convention Act provides federal courts with removal jurisdiction over actions relating "to an arbitration agreement . . . falling under the Convention." 9 U.S.C. § 205.

An agreement is governed by the Convention when the following four jurisdictional requirements are met: (1) there is an agreement to arbitrate in writing; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement arises out of a commercial, legal relationship; and (4) a party to the agreement is not an American citizen, or where all parties to the agreement are American citizens and their commercial relationship "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *Bautista*, 396 F.3d at 1294, n.7 (citation and quotation omitted); 9 U.S.C. § 202.  Once these prerequisites are met a court must compel arbitration, unless one of the Convention's affirmative defenses applies. *Lindo*, 652 F.3d at 1276.

There is no dispute among the parties that the first three jurisdictional requirements are met.  However, the parties disagree on matters involving both clauses of the fourth jurisdictional prerequisite.  As to the first clause, Plaintiff contends his status as a legal permanent resident of the United States equates to citizenship for purposes of Section 202 of the Convention.  Thus, Plaintiff argues that since he and RCCL are both United States citizens, the SOEA falls outside the Convention and this Court lacks subject matter jurisdiction to compel the case to arbitration.  Regarding the second clause, Plaintiff argues that his employment relationship with RCCL lacks a sufficient foreign nexus to bring it within the confines of the Convention.

RCCL first argues that Plaintiff's status as a Jamaican citizen and legal permanent resident of the United States does meet the fourth jurisdictional prerequisite that one of the parties lack American citizenship.  In support, RCCL relies on a definition from the United States Citizenship and Immigrations Services ("USCIS") website to distinguish citizenship from lawful permanent residency.  Alternatively, assuming that the Court deems Plaintiff an American

4

citizen, RCCL then argues that the SOEA "envisaged performance abroad" and this matter should be compelled to arbitration. In short, this issue boils down to whether the fourth jurisdictional requirement is met. As either clause of the fourth jurisdictional requirement is sufficient to compel a matter to arbitration under the Convention, the Court finds that the clearer path to resolution lies with holding that Plaintiff is not a "citizen" for purposes of Section 202.

    1.    <u>Plaintiff's Citizenship Status</u>

Plaintiff's "citizenship" argument relies on a case from the Eastern District of Missouri that determined the proper test for establishing citizenship under Section 202 was to apply the broad definition used in the federal diversity statute. *N. Motors, Inc. v. Knudsen*, No. 4:10-CV-1317 CEJ, 2011 WL 2552573, at *3 (E.D. Mo. June 27, 2011). Under that definition, "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *Id.* However, this statutory language was eliminated in 2011 through the passage of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758 (the "Clarification Act"). *See H.K. Huilin Int'l Trade Co. v. Kevin Multiline Polymer Inc.,* 907 F. Supp. 2d 284, 287 (E.D.N.Y. 2012) (discussing legislative history of the Clarification Act).

Moreover, the Court is unpersuaded by the logic *Knudsen* employed and notes that no other court has followed suit most likely because "citizen" has a plain and unambiguous meaning.[1] *See Cox Enterprises, Inc. v. Pension Ben. Guar. Corp.*, 666 F.3d 697, 704 (11th Cir. 2012) ("When the language of a statute is plain and unambiguous we must apply that

---

[1] Another court within this District found the final jurisdictional prerequisite was "met because Plaintiff is a citizen of Nicaragua as reflected in the portion of the Employment Agreement labeled 'Nationality' and indicating 'NIC' for Nicaragua." *Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1344 (S.D. Fla. 2015). Here, Plaintiff has indicated on the operative SOEA that his Nationality is Jamaican. *See* SOEA (ECF No. 7–2).

meaning."); *Broward Gardens Tenants Ass'n v. U.S. E.P.A.*, 311 F.3d 1066, 1074 (11th Cir. 2002) ("When the import of the statute's language is clear, we need not resort to legislative history, and we never do so to undermine the plain meaning of clear statutory language."); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("When the words of a statute are unambiguous . . . judicial inquiry is complete."). This strong deference is necessary because "we must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).

Courts determine the plainness or ambiguity of statutory language "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997); *see also United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("We do not look at one word or term in isolation, but instead we look to the entire statutory context."). Under Section 202, an arbitration agreement "which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. Taking into consideration the broader statutory scheme and international flavor of the Convention Act, the plain language of Section 202 is—without question—unambiguous. Because the statute is clear, the Court's inquiry necessarily ends.[2] Plaintiff is not an American citizen, and thus the fourth jurisdictional prerequisite is satisfied.[3]

---

[2] Noting Section 202's language was "critical" in determining whether a relationship between two parties fell under the Convention, the Seventh Circuit opined that the statutory language was proof "[t]here is no ambiguity." *Lander Co. v. MMP Invests., Inc.*, 107 F.3d 476, 482 (7th Cir. 1997) ("Whatever Congress's precise thinking on the matter, it spoke clearly.").

[3] Further, the Supreme Court has made clear that "[t]here are 'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423 (1998) (quoting

2. <u>The Agreement Envisaged Performance Abroad</u>

Even if the Court assumed Plaintiff is an American citizen, the matter would still be compelled to arbitration as the SOEA falls under the Convention because—put simply—Plaintiff's commercial relationship with RCCL envisaged performance abroad. *See* Martinez Aff. ¶ 5 (ECF No. 7–3). RCCL notes that during the relevant time frame, the *Explorer of the Seas* was outside the territorial waters of the United States for approximately 77% of the time Plaintiff was onboard. *Id.* ¶ 6. According to RCCL, the ship routinely sailed and ported in foreign ports including Bermuda, Haiti, St. Maarten, and various locations throughout Canada. Plaintiff, on the other hand, emphasizes that he performed work only aboard the *Explorer of the Seas* and he was not requested to perform any work or services on foreign soil. Leighton Aff. ¶ 14 (ECF No. 8–1). Plaintiff also states that all of the ship's itineraries began and ended in the United States. *Id.* ¶ 9.

RCCL primarily relies upon a line of cases from this District where courts have compelled disputes between a cruise line and its employee to arbitration under similar factual circumstances. *See Alberts v. Royal Caribbean Cruises Ltd.,* Case No. 15-CV-22207-KMM (S.D. Fla Sept. 14, 2015) (ECF No. 17); *Ringewald v. Holland Am. Line--USA Inc.*, No. 1:15-CV-20254, 2015 WL 4199808, at *1 (S.D. Fla. July 10, 2015); *D'Cruz v. NCL (Bahamas) Ltd.*, No. 1:15-CV-20240, 2015 WL 1468327, at *1 (S.D. Fla. Mar. 30, 2015); *Rutledge v. NCL (Bahamas) Ltd.,* No. 14-23682-CIV, 2015 WL 458133, at *3 (S.D. Fla. Feb. 3, 2015); *Odom v. Celebrity Cruises, Inc.,* No. 10-23086-CIV, 2011 WL 10636151, at *3 (S.D. Fla. Feb. 23, 2011).

---

*United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)). Although Plaintiff's status as a lawful permanent resident may eventually lead him to citizenship by way of naturalization, it does not afford him such status now.

7

*Rutledge* provides a paradigm example of a court compelling arbitration in a matter wholly involving citizens of the United States. In *Rutledge*, the court found that the employment relationship between the defendant cruise line and the plaintiff "envisage[d] performance abroad" and thus the Convention Act's fourth jurisdictional requirement was met. *Rutledge*, 2015 WL 458133, at *3. The court based its decision on the following facts: 1) the cruise ship traveled outside the United States; 2) was outside the country for 80% of the plaintiff's employment; and 3) sailed to six foreign ports during the plaintiff's service on the vessel. *Id*. Accordingly, the court determined that the plaintiff was hired for work "to be performed primarily outside the United States." *Id*. (quoting *Odom*, 2011 WL 10636151, at *2 (S.D. Fla. Feb. 23, 2011)). Moreover, the court reasoned that the language of 9 U.S.C. § 202 and the "strong federal policy favoring arbitration support[ed] such a finding." *Id.* (internal quotation marks omitted).

Plaintiff, on the other hand, predominantly relies upon a different strand of cases to support his argument for remand. *See Armstrong v. NCL (Bahamas) Ltd*., 998 F. Supp. 2d 1335, 1338 (S.D. Fla. 2013); *Matabang v. Carnival Corp*., 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009). In *Armstrong*, the court denied the defendant cruise line's request to compel arbitration on the basis that it failed to meet the jurisdictional requirements of the Convention. *Armstrong*, 998 F. Supp. 2d at 1336. The plaintiff in *Armstrong* was a United States citizen and seaman who brought claims in state court against his former employer, despite an employment agreement mandating arbitration. *Id*. at 1337. The court concluded that "the relationship between Plaintiff and [defendant cruise line] is not the kind of transnational legal relationship governed by the Convention." *Id*. at 1338.

The court reasoned that the employment agreement did "not envisage Plaintiff's performance of work or services abroad" primarily because the plaintiff "performed work only aboard the [vessel] and was never requested to perform work or services on foreign soil." *Id*. at 1338–39. Similarly, in *Matabang*, the employment agreement made "no references to performance abroad or any foreign state, apart from the arbitration clause" and "the choice-of-law clause [wa]s territorially neutral." *Matabang,* 630 F. Supp. 2d at 1366. Plaintiff here also asserts that his work performance was only aboard RCCL's vessel while it was in international waters and he "never performed any work or services as a provision storekeeper, off the vessel, on foreign soil." *See* Leighton Aff. ¶ 14 (ECF No. 8–1).

This Court previously noted the divergent approaches courts of this District employ under similar factual circumstances to determine whether an employment relationship between a cruise line and its American employee envisages performance abroad.[4] *See Alberts v. Royal Caribbean Cruises Ltd.,* Case No. 15-CV-22207-KMM (S.D. Fla Sept. 14, 2015) (ECF No. 17). Contrary to Plaintiff's assertions, the cogent reasoning of *Rutledge* and *Odom* provide the better analysis of the issue. To begin with, the word "abroad" is generally defined as "[o]utside a country." Black's Law Dictionary (10th ed. 2014). As noted above, Plaintiff's employment aboard the *Explorer of the Seas* occurred predominantly outside the United States—including both time on international waters and in port at several foreign countries. Similar to the plaintiff

---

[4] Recently, the Eastern District of Louisiana provided a rather thorough discourse on the applicable law relevant to this Order and the split that exists amongst courts of this District. *Johnson v. NCL (Bahamas) Ltd*., No. CV 15-4400, 2016 WL 675705 (E.D. La. Feb. 19, 2016). In *Johnson*, the court compelled to arbitration a dispute between a U.S. citizen and defendant cruise line where the "Employment Agreement . . . envisaged performance or enforcement abroad or had some other reasonable relation with one or more foreign states." *Id.* at *16. There, during plaintiff's time aboard, "the vessel touched ports in ten different countries, sailed constantly, and spent more than 80% of her time abroad." *Id.* These facts are almost the mirror image of the ones presented in this case.

in *Odom*, Leighton's work as provision storekeeper "the reason for which he was hired—w[as] to be performed primarily outside of the United States." *Odom*, 2011 WL 10636151, at *2.

Central to this determination is the fact that Plaintiff's commercial relationship with RCCL—the relevant relationship for purposes of the Convention—encompassed Plaintiff's entire service onboard the vessel, whether in international waters or in the various foreign ports that the *Explorer of the Seas* called upon.  Moreover, "[t]he test set forth in 9 U.S.C. § 202 . . . is whether the contractual relationship 'envisages' performance abroad, not whether performance actually occurs abroad." *New Avex, Inc. v. Socata Aircraft Inc.*, No. 02 CIV.6519 DLC, 2002 WL 1998193, at *3 (S.D.N.Y. Aug. 29, 2002).  Taking into consideration these facts, this Court concludes the argument sways heavily in RCCL's favor that Plaintiff and RCCL envisaged performance abroad in the SOEA.  To conclude otherwise would mean the *Explorer of the Seas* was on a "cruise to nowhere."

Further buttressing this reasoning is the "strong federal policy in favor of arbitration." *Picard*, 564 F.3d at 1253.  As the *Odom* court recognized, "the federal policy favoring arbitration, the language in the [Convention Act]" combine to provide the "better interpretation" of whether the relationship between a cruise line and its employee "envisages performance abroad." *Odom*, 2011 WL 10636151, at *2; *see also Rutledge*, 2015 WL 458133, at *3 (same). After all, it is this Court's duty to "rigorously enforce agreements to arbitrate." *Klay*, 389 F.3d at 1200 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting that the federal policy favoring arbitration "applies with special force in the field of international commerce").  Under this alternative analysis the fourth jurisdictional requirement is also met and Plaintiff must submit his claims to arbitration.

### III. CONCLUSION

Accordingly, Defendant's Motion to Dismiss and Compel Arbitration (ECF No. 7) is GRANTED and Plaintiff's Motion for Remand (ECF No. 9) is DENIED.  Plaintiff's claims are hereby COMPELLED TO ARBITRATION pursuant to the terms of the SOEA.  This case is DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of April, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:   All counsel of record